FILED

05/11/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2017 Session

## STATE OF TENNESSEE v. SCARLET I. MARTIN

**Appeal from the Circuit Court for Cheatham County**
**No. 17289    Larry J. Wallace, Judge**

_____

### No. M2016-00615-CCA-R3-CD

_____

Defendant, Scarlet I. Martin, was convicted of driving under the influence of an intoxicant ("DUI") and driving under the influence of an intoxicant with a blood alcohol concentration ("BAC") greater than .08 ("DUI per se"). She appeals, arguing that the evidence was insufficient to support her convictions and that the trial court erred by denying her motion to suppress the results of a warrantless blood draw. After carefully reviewing the record, we conclude that the evidence was sufficient and that the blood draw was justified by exigent circumstances. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Rob McKinney and Brittney Hollis, Nashville, Tennessee, for the appellant, Scarlet I. Martin.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Ray Crouch, District Attorney General; and Jack Arnold and Talmage M. Woodall, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

*I. Procedural History and Factual Summary*

After a preliminary hearing, Defendant was indicted for DUI and DUI per se. Defendant filed a motion to suppress the test results of a warrantless blood draw. The trial court denied the motion. Defendant proceeded to a bench trial and was convicted as charged.

At trial, Trooper Bryant Campbell of the Tennessee Highway Patrol ("THP") testified that on February 5, 2014, he was dispatched to the site of a single-car accident on Chapmansboro Road. The accident occurred around 10:30 p.m. THP was notified of the accident by the Cheatham County Sheriff's Department. Deputies James Curran and William Zimmerlee were also dispatched to the scene. When Trooper Campbell arrived around 11:05 p.m., Defendant and a male passenger were receiving medical treatment and being loaded into the back of an ambulance. Trooper Campbell spoke briefly with the medical personnel, but he did not address Defendant or the passenger.

Pursuant to THP protocol, Trooper Campbell commenced a vehicle accident investigation. Trooper Campbell observed that the vehicle had departed from the road and gone "off down an embankment in a bunch of thicket-like area." There were about 50 feet of tire markings on the road, and it appeared that the vehicle travelled down the hill for about 150 feet. Trooper Campbell surmised that the vehicle was traveling north at the time of the accident. During the course of his on-site investigation, Trooper Campbell did not find any evidence of alcohol consumption and, therefore, did not have any suspicion of DUI at the time.

Because the vehicle appeared inoperable, Trooper Campbell called for a tow truck. The tow truck arrived around midnight. THP policy requires a patrolman to wait at the scene of an accident until a tow truck operator has completely secured the vehicle by loading the vehicle on the tow truck. The patrolman is also required to ensure that the tow truck operator retrieves all parts of the vehicle and does not leave anything behind.

After leaving the scene of the accident, Trooper Campbell went to the hospital to interview the Defendant and the passenger. He arrived at the hospital around 12:20 a.m. Defendant was being prepared for a CT scan, so Trooper Campbell spoke with the passenger, who appeared to have "scratches and marks all on him." When Defendant returned from the scan, Trooper Campbell "could smell alcoholic beverage coming off of her." The odor of alcohol was strong enough that the trooper recognized it "right away." Trooper Campbell also noticed a "slight" slurring of Defendant's speech.

Defendant admitted to Trooper Campbell that she was driving the vehicle and that she and the passenger were returning from Nashville. Defendant also admitted she had two alcoholic beverages before driving. At this point, Trooper Campbell suspected Defendant of committing DUI so he read the implied consent form to Defendant. She

refused to sign the form and refused to submit to a blood draw. Trooper Campbell directed one of the nurses to proceed with a blood draw without Defendant's consent. After the blood was drawn, Trooper Campbell secured the blood. A forensic analysis of the blood conducted by the Tennessee Bureau of Investigation determined that Defendant's BAC was .17, which is more than twice the legal limit in Tennessee.

Trooper Campbell testified that there was nothing that he could have done to speed up the investigation. He later learned that the crashed vehicle was registered to Defendant's father.

The trial court found Trooper Campbell's testimony credible and found Defendant guilty as charged. The trial court merged both convictions and accepted the parties' agreement to a minimum sentence. Defendant filed a timely notice of appeal.

## II. Analysis

Defendant argues that there was insufficient evidence to support her convictions. Defendant also argues that the trial court erred by denying her motion to suppress because the warrantless search and seizure of her blood was unconstitutional. The State maintains that the evidence was sufficient and that the warrantless blood draw was justified based on exigent circumstances. Defendant maintains that any exigency that existed was created by law enforcement.

### A. Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions

concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

A person commits DUI by operating a motor vehicle on a public road while an intoxicant "impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess." T.C.A. § 55-10-401(1). A person also commits DUI by operating a motor vehicle on a public road if "[t]he alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more." T.C.A. § 55-10-401(2).

At trial, the State presented evidence that Defendant was involved in an automobile accident, which resulted in Defendant and her passenger being hospitalized. When Trooper Campbell encountered Defendant at the hospital, he immediately smelled the odor of alcohol coming from Defendant. He also observed that Defendant's speech was slightly slurred. Defendant admitted to consuming alcoholic beverages before driving home. The crashed vehicle belonged to Defendant's father. Defendant refused to submit to a voluntary blood draw. The toxicology results of the forced blood draw showed that Defendant's BAC was .17.

In the light most favorable to the State, the foregoing facts establish that Defendant was driving an automobile while unsafely impaired by an intoxicant and while possessing a BAC of .08 or more. Accordingly, the evidence is sufficient for DUI and DUI per se. Defendant is not entitled to relief on this issue.

*B. Warrantless Blood Draw*

In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact "unless the evidence preponderates otherwise." *State v. Bell*, 429 S.W.3d 524, 528 (Tenn. 2014) (citing *State v. Climer*, 400 S.W.3d 537, 556 (Tenn. 2013)). Witness credibility, the weight and value of the proof, and the resolution of conflicts in the proof "are matters entrusted to the trial court as the trier of fact." *Id.* at 529. "The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The trial court's resolution of questions of law and application of the law to the facts are reviewed de novo with no presumption of correctness. *State v. Day*, 263 S.W.3d 891, 900 (Tenn. 2008).

When reviewing a trial court's ruling on a motion to suppress, this Court "may consider the entire record, including not only the proof offered at the hearing, but also the evidence adduced at trial," *State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012) (citing *State v. Henning*, 975 S.W.2d 290, 297-99 (Tenn. 1998)), as well as at the preliminary hearing, *State v. McCrary*, 45 S.W.3d 36, 41 (Tenn. Crim. App. 2000) (citing *Henning*, 975 S.W.2d at 299). Thus, we will set forth some of the additional evidence presented at the preliminary hearing and at the suppression hearing.

At the preliminary hearing, Deputy Curran testified that, when he arrived at the accident scene, Defendant appeared "highly upset" and was crying. He overheard Defendant saying that "she couldn't afford a DUI because she was in nursing school." Deputy Zimmerlee testified that he "detected a strong odor of alcoholic beverage coming from" Defendant while she was in the back of an ambulance. Deputy Curran was trained to do DUI investigations, but he did not participate in the investigation in this case in any capacity because Trooper Campbell was "working it." Similarly, Deputy Zimmerlee did not conduct any type of investigation because the deputies "let THP deal with it." The deputies were advised by the sheriff's department "to have THP work" automobile accidents with injuries. When Trooper Campbell arrived, the deputies turned the scene over to him.

At the preliminary hearing, Trooper Campbell testified that he could "smell an alcoholic beverage coming from" Defendant when he first encountered her at the hospital, and she was acting "very uncooperative." Defendant's passenger "admitted that he had been out drinking." He said that Defendant had a couple of drinks, but he did not know exactly how many. Defendant's blood was drawn at 12:54 a.m. on February 6, 2014. Trooper Campbell acknowledged that the jail was near the hospital and that he could have gotten a warrant from the magistrate. Trooper Campbell had previously applied for a search warrant and knew how to do so. However, nearly two and one-half hours had elapsed since the accident, and Trooper Campbell still would have had to call a magistrate down to the jail to approve the search warrant. Trooper Campbell did not have the capability to personally contact a judicial officer for a search warrant.

At the suppression hearing, Trooper Campbell testified consistently with his preliminary hearing testimony and his trial testimony. The automobile accident occurred at approximately 10:30 p.m. Trooper Campbell arrived at the scene around 11:05 p.m. and was there for about an hour. He estimated that the deputies left the scene after about fifteen minutes because "they had other calls to go to."

While at the scene of the accident, Trooper Campbell did not have any reason to believe that he was investigating a potential DUI. He did not discuss any details of the

case with Deputies Curran and Zimmerlee aside from the basic facts that the car appeared to have gone off the road and rolled down an embankment and that the passengers were injured and about to go to the hospital. According to Trooper Campbell, most highway patrolmen prefer not to discuss facts or theories with other officers at an accident site when conducting an investigation. This is so that the investigator can develop his own theory of the case and obtain as much evidence as possible directly from the primary sources rather than through hearsay. Trooper Campbell added that, "in a lot of counties, the deputies aren't trained to investigate crashes" beyond receiving "a short course."

Trooper Campbell arrived at the hospital just before 12:30 a.m. on February 6, 2014. After developing suspicion of DUI, Trooper Campbell read the implied consent form to Defendant. She refused to consent to a blood draw at approximately 12:45 a.m., which was approximately two hours and fifteen minutes after the accident occurred. Trooper Campbell then ordered an involuntary blood draw based on the time elapsed since the accident and the fact that the passenger was injured. Trooper Campbell was also concerned that Defendant might have been released from the hospital while he was obtaining a warrant. He did not make any attempt to obtain a warrant or inquire as to how long it would take to do so. Trooper Campbell explained that, based on previous experience, it probably would have taken him an additional thirty minutes to prepare a warrant application and it would have taken the magistrate another thirty minutes to get to the courthouse. On the one previous occasion that Trooper Campbell had obtained a search warrant for a blood draw in Cheatham County at night, it took about an hour and twenty minutes.

Trooper Campbell testified that he could have sought assistance from the local police or the sheriff's department if he thought he needed assistance at any time. However, Trooper Campbell also testified that, even if he had suspected a DUI soon after arriving at the accident scene, it would not have altered the timeline of events because he would have had to complete his investigation at the accident scene before going to the hospital.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). One such exception is recognized for exigent circumstances. *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008). However, the exigent circumstances

relied upon for a warrantless search cannot be created by the actions of law enforcement officers. *State v. Carter*, 160 S.W.3d 526, 532 (Tenn. 2005). The burden is on the State to prove that a warrantless seizure was constitutionally permissible. *State v. Nicholson*, 188 S.W.3d 649, 656-57 (Tenn. 2006); *Henning*, 975 S.W.2d at 298.

A blood draw conducted at the behest of a law enforcement officer for law enforcement purposes is a search subject to constitutional protection. *Birchfield v. North Dakota*, -- U.S. --, 136 S. Ct. 2160, 2173 (2016); *Missouri v. McNeely*, -- U.S. --, 133 S. Ct. 1552, 1558 (2013); *State v. Reynolds*, 504 S.W.3d 283, 304 (Tenn. 2015). However, under the Fourth Amendment's exception for exigent circumstances, in some situations a warrantless blood draw may be constitutionally permissible in order to prevent the destruction of evidence due to the metabolic dissipation of alcohol in blood stream. *McNeely*, 133 S. Ct. at 1561; *Schmerber v. California*, 384 U.S. 757, 770-71 (1966). Whether a warrantless blood draw based upon exigent circumstances is constitutionally permissible depends on a "case-by-case assessment" in light of the totality of the circumstances. *McNeely*, 133 S. Ct. at 1561. In this context, the Supreme Court has explained:

> In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so. We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test.

*Id.* (citation omitted). The Court further explained:

> [T]he fact that a particular drunk-driving stop is "routine" in the sense that it does not involve " special facts," such as the need for the police to attend to a car accident, does not mean a warrant is required. Other factors present in an ordinary traffic stop, such as the procedures in place for obtaining a warrant or the availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search. The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case.

*Id.* at 1568.

Since *McNeely*, this Court has had several occasions to consider whether a warrantless blood draw was justified based on exigent circumstances. For support, Defendant relies on the cases of *State v. Charles A. Kennedy*, No. M2013-02207-CCA-R9-CD, 2014 WL 4953586 (Tenn. Crim. App. Oct. 3, 2014), *no perm. app. filed*, and *State v. James Dean Wells*, No. M2013-01145-CCA-R9-CD, 2014 WL 4977356 (Tenn. Crim. App. Oct. 6, 2014), *no perm. app. filed*. In contrast, the State relies on *State v. Darryl Alan Walker*, No. E2013-01914-CCA-R3-CD, 2014 WL 3888250 (Tenn. Crim. App. Aug. 8, 2014), *no perm. app. filed*, to support its argument that exigent circumstances were present in this case.

In *Charles A Kennedy*, two officers detained the defendant in a traffic stop at approximately 12:30 a.m. 2014 WL 4953586, at *8. The defendant appeared intoxicated, and he was arrested at approximately 12:50 a.m. *Id.* A third officer arrived and drove the defendant to the police station to conduct field sobriety tests "on more level ground." *Id.* The first two officers followed the third officer to the station, where they arrived at approximately 1:00 a.m. *Id.* The defendant refused to perform field sobriety tests and also refused to consent to a blood draw after being read the implied consent form. *Id.* The refusal occurred at 1:17 a.m. *Id.* Two officers left the police station with the defendant at approximately 1:30 a.m., and they arrived at a hospital around 2:00 a.m. for an involuntary blood draw. *Id.* The defendant's blood was finally drawn at 2:30 a.m. *Id.* A county magistrate testified that officers were required to appear in person to apply for a search warrant and that the process usually took between twenty minutes and one hour. *Id.* at *9. Usually, only one magistrate would have been on duty at that time of night. *Id.* This Court found that the State failed to prove that exigent circumstances justified the warrantless blood draw. *Id.* Noting that nothing prevented one of the officers from obtaining a search warrant while the other officers took the defendant to the hospital, we concluded that the record did "not support the State's argument that obtaining a warrant in this case would have required significantly more time than the warrantless blood draw." *Id.* at *10.

In *James Dean Wells*, we explained:

> The trial court here examined the totality of the circumstances and concluded that exigent circumstances did not exist. In making this determination, the trial court found that five officers were simultaneously investigating the incident, that a magistrate was on duty in a building ten minutes from the place where the defendant was apprehended, and that it took a magistrate an average of ten minutes to review a warrant. The trial court further found that the defendant waited at the hospital, which was essentially across the street from the gas station where he was apprehended,

for approximately one hour until his blood was drawn . . . . Based on the time elapsed between the violation and the blood draw, the speed with which a warrant could have been obtained, and the availability of law enforcement personnel to obtain the warrant, we conclude that the circumstances were not exigent, as the record demonstrates that police could have "reasonably obtain[ed] a warrant . . . without significantly undermining the efficacy of the search" and were, therefore, required to do so under the Fourth Amendment . . . .

2014 WL 4977356, at *5.

In *Darryl Alan Walker*, a state trooper was dispatched to the scene of a motorcycle crash. 2014 WL 3888250, at *1. When the trooper arrived, the driver was already en route to the hospital, but a passenger remained at the scene. *Id.* The trooper interviewed the passenger and noticed an odor of alcohol. *Id.* The trooper then surveyed the scene and observed a damaged motorcycle that "appeared to have driven off the road into a ditch." *Id.* A tow truck took between twenty and thirty minutes to arrive, and the trooper had to assist the tow truck driver in loading the motorcycle. *Id.* After approximately an hour at the scene, the trooper made about a twenty-minute drive to the hospital. *Id.* Once at the hospital, the driver was being prepared to receive stitches. *Id.* The trooper questioned the motorcycle driver about the accident. *Id.* The driver smelled of alcohol, had bloodshot eyes, and had difficulty following the conversation. *Id.* The trooper was required to wait while the driver received stitches. *Id.* After the medical procedure was complete, the trooper placed the driver under arrest and read the implied consent form. *Id.* At some point, the driver admitted to being at a bar prior to the accident and to having one beer. *Id.* at *2. The trooper testified that it would have taken additional time to obtain a search warrant application from his supervisor and then more time to locate a magistrate. *Id.* The defendant was arrested just over two hours after the trooper initially arrived at the scene of the accident, and the defendant's blood was drawn after the arrest. *Id.* at *5. Given the totality of the circumstances, this Court concluded that the warrantless blood draw was justified based on exigent circumstances. *Id.*

Although not cited by either party, we also reviewed several other cases in which this Court has considered whether a warrantless blood draw was justified under exigent circumstances. It appears that *Darryl Alan Walker* is our only case since *McNeely* to uphold a warrantless blood draw on the basis of exigent circumstances.[1] Nonetheless,

---

[1] *See, e.g., State v. Helkie Nathan Carter*, No. M2015-00280-CCA-R9-CD, 2016 WL 3044216, at *7 (Tenn. Crim. App. May 20, 2016) (finding no exigent circumstances where the defendant's blood was drawn about seventy minutes after traffic stop despite hospital being ten minutes from courthouse where warrant could have been obtained), *perm. app. granted*, (Tenn. Mar. 8, 2017) (remanding for reconsideration); *State v. Micah Alexander Cates*, No. E2014-01322-CCA-R3-CD, 2015 WL 5679825, at

given the strong factual similarities between this case and *Darryl Alan Walker*, we are compelled to conclude that the search in this case was justified by exigent circumstances.

In *Darryl Alan Walker*, a lone trooper responded to the scene of a single-motorcycle accident, and the driver was already on the way to the hospital when the trooper arrived. It took the trooper about an hour to wait for a tow truck and to assist the tow truck driver in securing the wrecked vehicle. The trooper then drove straight to the hospital where he had to wait for the motorcycle driver to receive stitches before the trooper could complete questioning about the accident. After developing probable cause of DUI, the trooper arrested the motorcycle driver approximately two hours after the accident occurred. The trooper testified that it would have taken additional time to prepare a search warrant application and even more time to contact and obtain approval from a local magistrate.

Similarly, in this case, Trooper Campbell responded alone to a single-vehicle accident. When he arrived, the driver and the passenger were already in an ambulance about to go to the hospital. Although there were two sheriff's deputies already at the scene, those deputies left about fifteen minutes after Trooper Campbell arrived. The deputies did not assist with the accident or DUI investigation and did not relay any of their DUI suspicions to Trooper Campbell. Trooper Campbell followed THP protocol and remained at the scene for about an hour, during which he investigated the accident and waited for a tow truck driver to arrive and secure the wrecked vehicle. Trooper Campbell did not find any evidence of DUI at the scene. He then drove straight to the hospital, where the driver was about to receive a CT scan. Trooper Campbell spoke to the passenger and waited for the driver. When the driver returned, Trooper Campbell questioned the driver. Upon developing probable cause of DUI, Trooper Campbell read

---

*8-9 (Tenn. Crim. App. Sept. 28, 2015) (finding no exigent circumstances where the defendant was injured in a car accident and his blood was drawn about forty-five minutes later but the State failed to show why one of the eleven responding officers could not have sought a search warrant while the defendant was being transported to the hospital), *perm. app. granted*, (Tenn. Nov. 16, 2016) (remanding for reconsideration); *State v. Melvin Brown*, No. W2014-00162-CCA-R9-CD, 2015 WL 1951870, at *5 (Tenn. Crim. App. Apr. 30, 2015) (finding no exigent circumstances where the State failed to prove that one of two law enforcement officers could not have obtained a search warrant during the nearly two and a half hours between the defendant's car accident and the blood draw), *perm. app. granted*, (Tenn. Nov. 22, 2016) (remanded for reconsideration); *State v. Boyce Turner*, No. E2013-2304-CCA-R3-CD, 2014 WL 7427120, at *7 (Tenn. Crim. App. Dec. 30, 2014) (finding no exigent circumstances where the State did not show why neither the supervisor responding to the arresting state trooper nor one of the five responding police officers could have helped obtain a warrant prior to the blood draw an hour after the traffic stop), *no perm. app. filed*; *State v. James K. Gardner*, No. E2014-00310-R3-CD, 2014 WL 5840551, at *9 (Tenn. Crim. App. Nov. 12, 2014) (finding no exigent circumstances where the State did not show why one of the three responding deputies could not have sought a warrant prior to the blood draw about forty-four minutes after the traffic stop), *no perm. app. filed*.

the implied consent form to the driver, which was about two hours and fifteen minutes after the accident occurred. The driver's blood was drawn about ten minutes later.

Trooper Campbell testified that he conducted the accident investigation and the subsequent DUI investigation as efficiently as he could. He was the only trooper on duty in the area at that time. Although two sheriff's deputies also responded to the scene, they left on other calls shortly after Trooper Campbell arrived. Even if those deputies had been available to assist Trooper Campbell in a DUI investigation, Trooper Campbell would not have solicited their help or the help of anyone else because he was unaware that a DUI investigation was needed until he went to the hospital. By the time Trooper Campbell suspected DUI, over two hours had elapsed since the accident occurred. At that point, Trooper Campbell opted for an involuntary blood draw to preserve the driver's blood because he figured that obtaining a search warrant at that time of night would have taken about another hour based on his previous experience doing so.

This case is distinguishable from *Charles A. Kennedy* and *James Dean Wells*. In those cases, multiple officers from the same law enforcement agency were involved in the DUI investigation, and the officers knew that they were performing a DUI investigation shortly after the outset of their interaction with the defendant. Under such circumstances, it was quite feasible for the officers in those cases to simultaneously proceed with both continuing the DUI investigation and seeking a search warrant. Furthermore, the length of the delay between the arrest and the blood draw in those cases was shorter than the delay in this case.

We are mindful of the Supreme Court's concern about rulings on this subject that "might well diminish the incentive for jurisdictions 'to pursue progressive approaches to warrant acquisition that preserve the protections afforded by the warrant while meeting the legitimate interests of law enforcement.'" *McNeely*, 133 S. Ct. at 1563 (quoting *State v. Rodriguez*, 156 P.3d 771, 779 (Utah 2007)). Accordingly, nothing in this opinion is intended to promote law enforcement protocol that delays the efficient investigation of DUI cases or to dissuade officers from different law enforcement entities from collaborating in such cases. However, we conclude that Trooper Campbell acted reasonably under the facts of this case by authorizing a warrantless blood draw so as to prevent a delay of over three hours before Defendant's blood could be preserved as evidence of DUI.[2] This was not a situation where the exigent circumstances were created

---

[2] In *McNeely*, the supreme court acknowledged:

> While experts can work backwards from the BAC at the time the sample was taken to determine the BAC at the time of the alleged offense, longer intervals may raise questions about the accuracy of the calculation. For that reason, exigent circumstances

- 11 -

by the state actors. Trooper Campbell performed his work as efficiently as he could under the circumstances. Seeking a search warrant for Defendant's blood would have taken considerable additional time, thereby significantly undermining the efficacy of the criminal investigation. Therefore, the warrantless draw of Defendant's blood was justified on the basis of exigent circumstances.

*III. Conclusion*

Based on the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE

---

justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process.

133 S. Ct. at 1563.