IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 9, 2019

## STATE OF TENNESSEE v. DONTE LAVON GREEN

**Appeal from the Circuit Court for Madison County**
**No. 17-221   Donald H. Allen, Judge**

_____

### No. W2018-00092-CCA-R3-CD

_____

The Defendant, Donte Lavon Green, was charged with narcotics offenses after drugs were discovered during a "protective sweep" of his motel room and subsequently seized pursuant to a search warrant. The trial court denied the Defendant's motion to suppress the evidence, and a jury convicted him of possession with intent to sell 0.5 grams or more of cocaine, possession with intent to deliver 0.5 grams or more of cocaine, possession with intent to sell 14.175 grams or more of marijuana, possession with intent to deliver 14.175 grams or more of marijuana, and possession of drug paraphernalia. The Defendant challenges the sufficiency of the evidence and the denial of his motion to suppress. After a thorough review of the record, we conclude that the evidence is sufficient to support the convictions and that the Defendant is not entitled to the suppression of the evidence, which was seized pursuant to a search warrant not challenged on appeal. Accordingly, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

Anna Banks Cash, Jackson, Tennessee, for the Appellant, Donte Lavon Green.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant had been a guest in a motel for approximately one week when another guest alerted the motel clerk to the smell of marijuana in the hallway and the clerk notified law enforcement. After drugs were discovered in the Defendant's room, he was charged with possession of 0.5 grams or more of cocaine with the intent to sell, possession of 0.5 grams or more of cocaine with the intent to deliver, possession of 14.175 grams or more of marijuana with the intent to sell, possession of over 14.175 grams or more of marijuana with the intent to deliver, possession of drug paraphernalia, and escape from custody.

Officer Clayton Smith of the Jackson Police Department, the only witness at the suppression hearing, testified that on July 1, 2016, at approximately 8:45 p.m., he was dispatched to the motel to investigate possible drug activity. The clerk told him that a strong odor of marijuana was coming from the fourth floor, somewhere between rooms 450 and 454. The clerk told law enforcement that she suspected the smell might be coming from room 452 because all of the other rooms in the vicinity were occupied by families, while room 452 was occupied by a single man, the Defendant. The clerk also "said there's possibly a female inside of the room."

Uniformed law enforcement used the elevator to reach the fourth floor and Officer Smith could smell raw marijuana as soon as he exited the elevator. He did not smell marijuana burning. Officer Smith acknowledged he went straight to room 452. He testified that when he was directly in front of the room, he was able to determine that the odor of marijuana was coming from it. The Defendant's room was equipped with a latch that was flipped toward the door, propping the door open a crack.

Officers were preparing to knock on the Defendant's door when he opened it, and they smelled a strong odor of marijuana when the door was opened. Officers asked the Defendant about the odor of marijuana as he stood in the doorway, and he responded that he did not know anything about the odor of marijuana coming from his room. The Defendant was detained while he was in the doorway and brought into the hallway outside of the motel room, where he was searched and where an officer "sat him down." The search of the Defendant's person yielded one empty plastic bag and $79. The Defendant told law enforcement that no one was in the room.

Police officers then "challenged the room," which Officer Smith described as identifying themselves as police officers and ordering anyone in the room to come out. There was no response. Officer Smith acknowledged that he did not hear any noises at

all from the room, including voices, movement, or a toilet flushing. He agreed that the only articulable fact which made him believe the room might be occupied was "[j]ust the clerk's word saying that there's possibly a female inside."

Officers entered the room "to do a protective sweep of the room to make sure nothing was being destroyed." Officer Smith described the layout of the room, which had a bathroom immediately to the left of the entry, two beds beyond the bathroom, and a "patio" area. When officers entered the room, no one was present, but they saw plastic bags on the bed and marijuana on the bedside table. Officers were in the room for approximately fifteen to thirty seconds. They began to exit the room when they heard a commotion which turned out to be the Defendant fleeing down the staircase. The Defendant was apprehended and taken into custody in a neighboring parking lot, and Officer Smith returned to the room to secure it while a search warrant was obtained.

Pursuant to the search warrant, police found pills in a fanny pack, marijuana, and cocaine. Officer Smith acknowledged that he did not secure video footage of the hallway from the motel.

The search warrant was not included in the record on appeal. Defense counsel noted at the suppression hearing that the search warrant was obtained using information gathered during the protective sweep. The trial court read portions of the affidavit in a discussion with counsel. The trial court noted that the affidavit contained information that the clerk had alerted police to the smell of marijuana coming from the room, that police smelled marijuana in the hallway, that the Defendant opened the door, and that the officer "immediately smelled the strong odor of what he believed to be raw marijuana coming from the room," at which point the Defendant was detained. The affidavit included a statement, that "[o]fficers began clearing the room for other possible persons in order to secure the room."

The trial court denied the Defendant's motion to suppress the evidence, concluding that law enforcement had a reasonable belief that someone other than the Defendant was in the room because the clerk had informed the law enforcement officers that a woman could be in the room. The trial court also credited Officer Smith's testimony and found that the Defendant was untruthful when he told Officer Smith that he did not know about the odor of marijuana coming from his room. Accordingly, the trial court found that the initial entry into the room was proper.

The case proceeded to trial, where Ms. Amber Gallagher, who was employed as the lead front desk clerk at the motel, testified that she received a complaint from a guest that someone was smoking marijuana on the fourth floor of the motel. Following motel policy, she summoned the police. She also went upstairs to see if she could smell

anything, and she smelled marijuana from the vicinity of rooms 451 to 455. Not all of these rooms were occupied, and one was occupied by the complaining guest. Ms. Gallagher gave police two or three room numbers to check. Through the motel's video surveillance system, she observed the Defendant's encounter with police and his attempted escape. Ms. Gallagher stated that she habitually refused to rent rooms to guests if they had previously had high traffic or the odor of drugs in their rooms. Although the Defendant had been there for at least one week, she had seen no suspicious activity in his room during that time. He had had two different women as guests. Ms. Gallagher stated that she had predominantly seen the Defendant with one young woman and that she believed that "even in that night that there was a woman there." To her knowledge, no one requested that the motel's video surveillance be preserved.

Officer Smith testified generally consistently with his testimony at the suppression hearing. He stated that Ms. Gallagher had told him "that there was possibly a female in the room with him" and that the smell of marijuana became stronger when the Defendant opened his door. The Defendant said that no one else was in the room and that there was no marijuana in the room, and he refused consent to search the room. Officer Smith reiterated that the Defendant was detained in the doorway and asked to sit in the hallway while officers "entered the room to make sure that nobody was in the room destroying any type of evidence or anything like that." Officer Smith testified that there were multiple clear plastic bags inside a larger bag and digital scales in the room. He stated that scales are used to measure narcotics and that plastic bags can be used for storing narcotics.

Law enforcement recovered one bag with approximately 33.6 grams of what appeared to be marijuana, one bag containing two separate bags containing a total of approximately 57.5 grams of what appeared to be marijuana, and six other bags containing between one and fifteen grams of what appeared to be marijuana. They also recovered a bag containing approximately 3.3 grams of a substance believed to be cocaine and a fanny pack with fewer than ten pills. Officer Smith acknowledged that plastic bags had many non-criminal uses, that scales would be beneficial to a buyer of drugs as well as a seller, and that the Defendant was not charged with any crime related to the pills. Officer Smith acknowledged that cocaine in the amount confiscated could be for personal use. He did not believe that the quantity of marijuana recovered was for personal use, particularly given the fact that it was split up into multiple plastic bags, but stated it was not out of "the realm of possibility." He testified that the plastic bags were too small for a sandwich, that they would hold "[v]ery little" snack, and that he had only seen bags that size used for drugs.

Officers Adam Pinion and Bradley Lewis testified consistently with Officer Smith regarding the search and arrest. Officer Pinion stated that Ms. Gallagher had told police

"that she believed there may be one or two people in the room."  He stated that law enforcement approached the room, that the Defendant "exited" or "stepped out," and that although Officer Pinion did not hear any noise from the room, officers conducted a protective sweep "to make sure that nobody else is in there that could destroy any evidence while we were in the process of obtaining a search warrant for the room." When the Defendant was arrested in the parking lot, officers found a bag containing one gram of what appeared to be marijuana in his sock.  Officer Pinion testified that the quantity of drugs seized from the motel room was not typical of personal use.

Officer Lewis confirmed that the Defendant opened the door and that police "had him come out into the hallway and sit down."  They did not hear anything from inside the room but subsequently performed the "security sweep."  He characterized the cocaine as a "fairly small" amount but later stated that it was more than he typically saw in arrests for personal use.  He acknowledged that none of the officers involved worked for the narcotics unit.

Special Agent Peter Hall of the Tennessee Bureau of Investigation ("TBI") testified that he only tested three of the bags delivered to the TBI pursuant to a policy designed to expedite the TBI's caseload.  His tests revealed 86.75 grams of marijuana and 2.24 grams of a substance containing cocaine, and law enforcement had submitted an additional 77.43 grams of a green leafy material which Agent Hall did not test.

The Defendant presented the testimony of Ms. Kizzie Cheshier, who had known the Defendant for thirteen years.  The Defendant was the father of Ms. Cheshier's son, and she testified that the Defendant had suffered an ongoing problem with the use of marijuana and cocaine and that it had caused problems in their relationship.

The trial court granted a judgment of acquittal on the escape charge, concluding that all of the police officers had testified that the Defendant was not under arrest or in custody at the time that he ran down the stairs. The jury convicted the Defendant of the remaining charges.  The trial court merged the cocaine offenses and merged the marijuana offenses.  The Defendant was sentenced to serve nineteen years for the cocaine conviction, six years for the marijuana conviction, and eleven months and twenty-nine days for possession of drug paraphernalia.  The marijuana and drug paraphernalia convictions were to run concurrently with one another but consecutively to the cocaine conviction for an effective sentence of twenty-five years.  The Defendant appeals, challenging the sufficiency of the evidence and the ruling on the motion to suppress the evidence.

## ANALYSIS

## I. Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to sustain the verdicts, contesting the fact that he possessed the drugs and contending that the evidence supports the inference that the drugs were for personal use. The State responds that the evidence is sufficient.

This court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277. "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

It is an offense to knowingly possess a controlled substance with the intent to deliver or sell the controlled substance. T.C.A. § 39-17-417(a)(4). A violation of Tennessee Code Annotated section 39-17-417(a)(4) is a Class B felony if the controlled substance was 0.5 grams or more of any substance containing cocaine. T.C.A. § 39-17-417(c)(1). A violation of Tennessee Code Annotated section 39-17-417(a)(4) is a Class E felony if the controlled substance is 14.175 grams or more but less than 4,535 grams of marijuana. T.C.A. § 39-17-417(g)(1). Accordingly, the State had to prove that the Defendant knowingly possessed a controlled substance, the nature of and amount of the controlled substance, and that the Defendant possessed the substance with the intent deliver or sell it. *See State v. Ross*, 49 S.W.3d 833, 845 (Tenn. 2001).

To show that the Defendant was guilty of the possession of drug paraphernalia, the State had to show that the Defendant used, or possessed with the intent to use, "drug paraphernalia to … pack, repack, store, contain, [or] conceal … a controlled substance or controlled substance analogue in violation of this part." T.C.A. § 39-17-425(a)(1). Accordingly, for this conviction, the State was required to establish: "(1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute." *State v. Mallard*, 40 S.W.3d 473, 486 (Tenn. 2001).

The Defendant does not contest that the substances in the hotel room were marijuana and cocaine or the weight of the substances found in the motel room. He does not argue that electronic scales and plastic sandwich bags do not qualify as drug paraphernalia. *See Ross*, 49 S.W.3d at 846 ("The evidence in the record demonstrates that the electronic scales and plastic sandwich bags could be used as drug paraphernalia and that the defendant intended to use the items for illicit purposes.").

The Defendant argues instead that he was not in possession of the drugs and paraphernalia. Possession under the relevant statutes may be actual or constructive. *Id.* at 845. Constructive possession "'is the ability to reduce an object to actual possession.'" *State v. Harvell*, 415 S.W.3d 853, 860 (Tenn. Crim. App. 2010) (quoting *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). "Constructive possession requires proof that a person had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others." *State v. Belew*, 348 S.W.3d 186, 189 (Tenn. Crim. App. 2005). Here, the Defendant had rented and occupied the motel room for approximately one week prior to the offenses. The drugs were discovered immediately after he emerged from the room, and the room was otherwise unoccupied. The drugs had a strong odor and were scattered over the bed and bedside table so that an occupant of the room could not have escaped knowledge of their presence. "[A] person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves." *Ross*, 49 S.W.3d at 846. "[P]ossession of and residence in [a] motel room is strong evidence of [the Defendant's] 'ability to reduce [the drugs] to actual possession.'" *Id.* (quoting *State v. Transou*, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996)). We conclude that under *Ross*, the evidence regarding the Defendant's relationship with the motel room that housed the controlled substances was sufficient to establish that the Defendant was in possession of the marijuana, cocaine, and drug paraphernalia.

The Defendant also contends that the items were for personal use and that he did not possess the requisite intent to sell or deliver the drugs. Proof of intent to sell or

deliver "usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence." *Belew*, 348 S.W.3d at 190. "'It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing.'" *State v. Ostein*, 293 S.W.3d 519, 529 (Tenn. 2009) (quoting T.C.A. § 39-17-419 (2003))).

Here, the testimony, viewed in the light most favorable to the State, established that the amount of marijuana and cocaine that the Defendant possessed was more than law enforcement officers typically encountered when the drugs were for personal use. Law enforcement officers testified that sandwich bags were commonly used to store or package drugs and that electronic scales were commonly used to weigh drugs for sale. The plastic bags at issue were too small to be used to store sandwiches and would only hold a "[v]ery little" snack. The marijuana was discovered distributed into eight different plastic bags, and law enforcement smelled raw rather than burning marijuana in the hallway. Officer Smith testified that the marijuana appeared to be packaged for sale rather than personal use because it was split up into smaller amounts. While Ms. Cheshier testified that the Defendant had a problem with the use of marijuana and cocaine and while law enforcement officers acknowledged that it was in the realm of possibility that the quantity of drugs at issue was for personal use, the jury was entitled to make the inference that the Defendant did not keep plastic bags, digital scales, and a relatively large quantity of drugs separated into discrete units for personal use, but was instead intending to sell or deliver the drugs. Accordingly, the evidence is sufficient to support the verdicts.

## II. Search of the Motel Room

The Defendant asserts that his constitutional rights were violated when officers entered his motel room during the initial "protective sweep." The State responds that exigent circumstances justified the initial search of the motel room, that the search was properly limited in scope, and that the drugs were found in plain view during the search. We determine that the legality of the initial entry is not dispositive of the suppression issue, because law enforcement subsequently obtained a warrant to search the room and because the Defendant does not challenge the validity of this search warrant on appeal.

A trial court's findings of fact in a suppression hearing are binding on the appellate court unless the evidence preponderates against them. *State v. Clark*, 452 S.W.3d 268, 282 (Tenn. 2014). Determinations regarding the credibility of witnesses, the weight of the evidence, and the resolution of conflicts in the evidence are entrusted to the trial court. *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012). The party who prevails at the trial level is entitled to the strongest legitimate view of the evidence and to

reasonable and legitimate inferences which may be drawn from it. *Id.* An appellate court may consider evidence adduced at trial in determining the correctness of a ruling on a motion to suppress. *State v. Sanders*, 452 S.W.3d 300, 306 (Tenn. 2014). The trial court's legal conclusions and mixed questions of law and fact are reviewed de novo. *State v. Meeks*, 262 S.W.3d 710, 722 (Tenn. 2008). The question of whether exigent circumstances justify a warrantless search is a mixed question of fact and law. *Id.*

The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Article I, section 7 of the Tennessee Constitution also guarantees the right of the people to "be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures." "[T]hese constitutional provisions are designed 'to prevent arbitrary and oppressive interference [by law enforcement officials] with the privacy and personal security of individuals.'" *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000) (quoting *INS v. Delgado*, 466 U.S. 210, 216 (1984)). The touchstone of Fourth Amendment jurisprudence is reasonableness. *Kentucky v. King*, 563 U.S. 452, 459 (2011); *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007).

This case concerns the "'chief evil'" at which the Fourth Amendment is aimed: physical entry into a home. *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). A warrantless search of a home is presumed to be unreasonable, even when police have probable cause to believe they will locate incriminating evidence inside. *State v. Carter*, 160 S.W.3d 526, 531 (Tenn. 2005). However, there are exceptions to the warrant requirement, including the existence of exigent circumstances. *Meeks*, 262 S.W.3d at 722. The State bears the burden of showing that the exception to the warrant requirement was met. *Id.* Preventing the imminent destruction of evidence is one such exigent circumstance. *Id.* at 723.

The Defendant challenges the initial entry into the motel room and asserts that if the entry was illegal, then the evidence recovered must be suppressed. We conclude that the evidence was admissible because it was obtained pursuant to a warrant not at issue on appeal.

The exclusionary rule may bar the admission of evidence obtained from an unconstitutional search. *Carter*, 160 S.W.3d at 532. However, the evidence may still be admissible if the evidence "is subsequently discovered following the execution of a valid warrant based upon facts independent and separate from information discovered as a result of the unlawful entry." *Id.* (concluding that the evidence was admissible despite an illegal search because the affidavit supporting the subsequent warrant did not refer to the initial illegal entry). The independent source doctrine provides that "an unconstitutional

entry does not compel exclusion of evidence found within a home if that evidence is subsequently discovered after execution of a valid warrant obtained on the basis of facts known entirely independent and separate from those discovered as a result of the illegal entry." *State v. Clark*, 844 S.W.2d 597, 600 (Tenn. 1992).

In analyzing the validity of a search pursuant to a warrant, a court may redact an affidavit to remove any references to tainted information that was illegally obtained, and "any resulting search is deemed constitutional so long as the redacted affidavit has been properly scrutinized and still suffices to establish probable cause." *State v. Randall Keith Smith and Nicholas Ryan Flood*, No. W2009-02678-CCA-R3-CD, 2011 WL 6885348, at *7 (Tenn. Crim. App. Dec. 27, 2011) (rejecting the defendant's contention that *Clark* demands otherwise, and concluding that such a reading of *Clark* is both too literal and inconsistent with federal and state practice). Such redaction is common practice in both the Sixth Circuit and Tennessee. *See*, *e.g.*, *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005); *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996); *Randall Keith Smith and Nicholas Ryan Flood*, 2011 WL 6885348, at *7 (citing cases); *State v. Stephen J. Udzinski and Donna Stokes a/k/a Donna Story*, No. 01C01-9610-CC-00431, 1998 WL 44922, at *9 (Tenn. Crim. App. Feb. 5, 1998); *State v. Vanderford*, 980 S.W.2d 390, 399-400 (Tenn. Crim. App. 1997); *see also State v. Bowling*, 867 S.W.2d 338, 342-43 (Tenn. Crim. App. 1993). The rationale for permitting a court to examine a redacted affidavit for probable cause is to prevent law enforcement from being put "'in a worse position than they would have been in absent any error or violation.'" *Murray v. United States*, 487 U.S. 533, 537 (1988) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984)).

The Defendant does not argue on appeal that the search warrant was rendered invalid by the initial warrantless entry. We note that at the suppression hearing, defense counsel did argue that the affidavit in the search warrant relied on facts ascertained during the initial entry. The trial court ultimately did not address the validity of the search warrant but concluded that the initial entry did not violate the Defendant's rights against unreasonable searches and seizures. Although the search warrant was made an exhibit to the hearing on the motion to suppress, it is not part of the record before us. The appellant has the duty to prepare a record which conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b); *see State v. Smotherman*, 201 S.W.3d 657, 661 (Tenn. 2006) (noting that "any matter that the trial court has appropriately considered is properly includable in the appellate record"). Because the affidavit is not part of the record and because the Defendant includes no argument regarding the validity of the search warrant, we consider any challenge to the search conducted pursuant to the search warrant waived.

We observe, regardless, that in rendering its decision at the suppression hearing, the trial court read from the affidavit supporting the search warrant. The affidavit recited that law enforcement were called to the motel due to the smell of marijuana, that they approached the Defendant's door, that the Defendant opened the door, and that an "[o]fficer immediately smelled the strong odor of what he believed to be raw marijuana coming from the room." The odor of an illegal substance alone can provide sufficient probable cause for the issuance of a search warrant. *State v. Billy Joe Hodge*, No. W2016-01009-CCA-R3-CD, 2017 WL 4004229, at *6 (Tenn. Crim. App. Sept. 8, 2017) (noting that "probable cause can be based solely on an officer's detection of the odor of marijuana" and concluding that the smell of marijuana from a residence provided probable cause for the search); *State v. Frederic A. Crosby*, No. W2013-02610-CCA-R3-CD, 2014 WL 4415924, at *8 (Tenn. Crim. App. Sept. 9, 2014) (the smell of marijuana emanating from a person provided probable cause to search); *State v. James Castile*, No. M2004-02572-CCA-R3-CD, 2006 WL 1816371, at *8 (Tenn. Crim. App. June 28, 2006) (determining "that the officers could have justified a warrantless search of the room based on the smell of methamphetamines alone" and rejecting the defendant's claim that an illegal pat-down entitled him to suppression of the evidence); *State v. Bradley Lonsinger*, No. M2003-03101-CCA-R3-CD, 2005 WL 49569, at *5-6 (Tenn. Crim. App. Jan. 5, 2005) (noting that the odor of methamphetamine from the defendant's home alone could established probable cause). Here, the affidavit alleged officers smelled marijuana emanating from the Defendant's room. Accordingly, it appears there was probable cause to support the search pursuant to the search warrant—a search that ultimately resulted in the recovery of the marijuana, cocaine, plastic bags, and scales.

Even if we were to conclude that law enforcement's initial entry was illegal because they did not possess a reasonable belief in the presence of an occupant of the room or reasonable belief that this person was likely to destroy evidence of a crime, *see United States v. Elkins*, 300 F.3d 638, 656 (6th Cir. 2002), the results of the search pursuant to the subsequently obtained warrant are not challenged on appeal. The incriminating evidence was seized during the search of the Defendant's room pursuant to the search warrant. Because the search pursuant to the search warrant is not under review, the Defendant has not demonstrated that he is entitled to the suppression of the evidence.

**CONCLUSION**

Based on the foregoing analysis, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE