Argued February 22, reversed and remanded for
new trial May 14, reconsideration denied September 7,
petition for review denied October 16, 1979

STATE OF OREGON, *Respondent,*

*v.*

CRAIG LESTER KELGARD, *Appellant.*

(No. 17-929B, CA 11589)

STATE OF OREGON, *Respondent,*

*v.*

LORI ANN HEDGECOCK, *Appellant.*

(No. 17-929A, CA 11591)

(consolidated cases)

594 P2d 1271

James E. Mountain, Jr., Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Catherine Allan, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

TANZER, J.

## TANZER, J.

Defendants were convicted of three counts of criminal activity in drugs. They assign as error the denial of their motion to suppress evidence seized during a warrantless search of their residence. The primary issue is whether the taint of the illegal entry and search of the residence was purged by defendant Hedgecock's consent to search the residence. We hold that it was not and therefore reverse.

The arresting officer, using binoculars, spotted what he thought were several marijuana plants in the upstairs window of defendants' house. He radioed for assistance and the two officers identified themselves to defendant Hedgecock at the front door. They asked to speak to her and she agreed, but her two large dogs were barking loudly and it was agreed that she should put them away. She closed the door, but did not lock it. After 30 seconds to a minute had elapsed, the arresting officer sent the backup officer around the outside of the house to determine if the plants had been moved. The backup officer reported he could not see them. The arresting officer then unlatched the door, entered the house and ran up the stairs, determined that the plants had not been moved, and came down the stairs. The defendant had by then returned from putting the dogs away. The arresting officer said to the backup officer, in defendant's presence, that the plants were still upstairs. At this point the arresting officer advised defendant of her Miranda rights. The defendant and the arresting officer discussed whether defendant would be cited or whether she would be transported to jail. The arresting officer told defendant that she would not be taken to jail unless narcotics were found. The arresting officer showed defendant a consent form, authorizing a search of her house, and asked her to sign it. Eventually she complied.

■ A warrantless search and seizure is per se an unreasonable government intrusion and the state has the burden of establishing the validity of such an

intrusion. *State v. Gilbert,* 24 Or App 907, 547 P2d 632 *rev den* (1976).

■ The trial court made written findings on all of the issues bearing on the validity of the intrusion, but some of the trial court's findings were actually conclusions of law.[1] We are bound by the facts implicitly found which support those conclusions, *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), but we are not bound by the conclusions themselves. *State v. Ward,* 38 Or App 425, 590 P2d 296 (1979); *State v. Cobb,* 22 Or App 510, 539 P2d 1140 *rev den* (1975). Our review leads us to conclude that the search of the residence was unlawful and that the taint arising from the unlawful search was not purged by intervening circumstances or independent causation.

■■ The arresting officer, when he saw what appeared to be marijuana plants in defendants' house, had probable cause to believe that contraband was present. However, there was evidence of no exigent circumstances to excuse his failure to procure a warrant at that point. Once the officers had determined to continue without a warrant and had indicated they wished to speak to defendant Hedgecock, and once she had closed the door to put away the dogs, they might have feared she would dispose of the evidence. However, whether exigent circumstances exist is normally

---

[1]    "(1) The defendant did not consent to the police officers initial entry into defendant's residence;

"(2) There were no exigent circumstances which justified the police officers entry into the residence;

"(3) That the initial search, where Officer Leutwyler looked upstairs in the defendant's residence and saw the plants, was not valid;

"(4) That defendant Lori Ann Hedgecock gave free and voluntary and knowing consent to police officers to search at the time she signed the consent to search form;

"(5) That defendant Lori Ann Hedgecock's knowing voluntary consent vitiates any taint which attaches to the original entry and search of the premises;

"(6) That defendant Lori Ann Hedgecock had authority to consent for defendant Craig Lester Kelgard, and did in fact give binding consent for Kelgard;

"(7) That Officer Gaidos [the backup officer] is a credible witness."
"* * * * *"

determined at the time the officer with probable cause decides whether to proceed with or without a warrant. The officer who chooses to act without a warrant cannot create his own exigent circumstances by a premature confrontation with a potential defendant. As the Supreme Court said in *State v. Fondren,* 285 Or 361, 367, 591 P2d 1374 (1978), "[t]he officer cannot create exigent circumstances by his own inaction."

■ Since there were no exigent circumstances forgiving the warrant requirement, it follows that the search of the house was unreasonable and all the fruits of it must be suppressed unless the state can prove that defendant's consent was "sufficiently distinguishable to be purged of the primary taint," *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

■■ A defendant's consent to search which follows an illegal search or seizure will ordinarily be regarded as tainted by that illegality if the consent is inextricably bound to the illegal search or seizure in terms of time and space. In this case, the arresting officer came down from the upstairs room which contained the contraband and announced within the defendant's hearing that the contraband was still present. Within a few minutes the officer persuaded the defendant to consent to a further search of the house. The close spatial and temporal proximity of the unlawful search and the consent indicates that the consent was the inseparable product of the illegal search and was therefore tainted by it. *Cf. State v. Ward, supra.*

Reversed and remanded for new trial.