# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
November 10, 2004 Session

## STATE OF TENNESSEE v. WILLIAM TIMOTHY CARTER, ET AL.

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Carroll County**
**No. 02CR-1813     Charles C. McGinley, Judge**

---

**No. W2002-00947-SC-R11-CD - Filed March 18, 2005**

---

We granted this appeal to determine whether evidence seized from the defendants' residence pursuant to a search warrant should be suppressed. Sheriff's deputies entered the defendants' residence without a warrant based upon an informant's tip and the deputies' recognition of the smell of anhydrous ammonia and ether. The deputies then detained the defendants while a warrant was obtained. We conclude that the deputies' warrantless entry into the defendants' residence was unlawful. However, the unlawful entry and any illegality in the subsequent detention did not taint the evidence seized pursuant to the search warrant, and the affidavit supporting the issuance of the warrant sufficiently established probable cause. Therefore, we affirm the judgment of the Court of Criminal Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed; Remanded to the Trial Court**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the Appellants, William Timothy Carter and Virginia Darlean Carter.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Fulks, Assistant Attorney General; G. Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On September 15, 2001, between 10:00 and 11:00 p.m., an anonymous caller informed the Carroll County Sheriff's Department that methamphetamine was being manufactured at the residence of the defendants, William Timothy Carter and Virginia Darlean Carter. While driving by the

defendants' residence, Deputy Michael Verner smelled anhydrous ammonia, and Deputy Timothy Meggs smelled both anhydrous ammonia and ether. Deputy Meggs testified that, based upon prior training, he recognized anhydrous ammonia as a product used in the manufacturing of methamphetamine.

When the deputies drove up to the defendants' residence, Deputy Meggs observed someone peering out of a window. As the deputies left their vehicles, Deputy Meggs heard people running inside the residence. The deputies continued to smell anhydrous ammonia as they approached the residence. Deputy Meggs approached the front door, and Deputy Verner approached the back door. Both deputies knocked and announced their presence. Deputy Verner entered through the back door while Deputy Meggs entered through the front door.

When the deputies entered the defendants' residence, they asked the defendants about the odor of ammonia. The defendants denied that the odor was coming from their residence. The deputies requested permission to search the residence, and the defendants refused to consent to a search. The deputies escorted the defendants and a third occupant to the front porch where they remained while Deputy Meggs secured a search warrant. Although the deputies did not arrest the defendants at that time, the defendants were not free to leave the premises.

Deputy Meggs and four additional deputies returned to the residence with a search warrant that was issued at 1:09 a.m. on September 16, 2001. The affidavit in support of the search warrant was signed by Deputy Meggs and provided:

> On 9/15/01 the Carroll County Sheriff[']s Department received an anonymous call that someone was cooking me[th]amphetamine at 7200 Hwy 190 in Carroll County. Your affiant then drove by 7200 Hwy 190 in Carroll County and did smell ether coming from the area of 7200 Hwy 190. Your affiant then approached the doorway of 7200 Hwy 190 and did notice the smell of ether and anhydrous ammonia coming from inside the residence and was able to hear several people running around inside the house. Your affiant has had considerable experience in working with methamphetamine labs and knows what he has observed to be consistent with the operation of a methamphetamine lab.

While executing the search warrant, the deputies seized marijuana, methamphetamine, and items used to manufacture methamphetamine. The deputies denied searching the residence prior to obtaining a search warrant. They further denied observing any of the items seized pursuant to the search warrant during their initial entry. The deputies arrested the defendants shortly after executing the warrant. The defendants were each charged with six drug-related offenses including the manufacture of methamphetamine, a Class C felony. See Tenn. Code Ann. § 39-17-417(a)(1), (c)(2) (1997).

The trial court found that the deputies had probable cause to obtain a search warrant for the defendants' residence upon smelling the "byproducts" of the manufactured methamphetamine but that the danger the defendants would dispose of evidence of illegal activities did not exist until the deputies began the raid. The trial court further found that the deputies improperly created the exigent circumstances to justify the warrantless entry and did not obtain the defendants' consent to enter the residence. Concluding that the search warrant was not properly obtained, the trial court granted the defendants' motion to suppress and dismissed the case.

In reversing the trial court's judgment, the Court of Criminal Appeals concluded that even if the deputies' initial entry was unlawful, incriminating evidence was neither discovered nor seized as a result. The Court of Criminal Appeals further concluded that the time in which the defendants were detained while Deputy Meggs obtained a search warrant was reasonable. Finally, the court held that the evidence seized while executing the search warrant was admissible pursuant to the independent source doctrine because the deputies obtained the warrant on the basis of information entirely independent from any information discovered as a result of the initial warrantless entry or detention. We granted review.

**ANALYSIS**

The defendants contend that the deputies' initial entry and the defendants' subsequent detention were illegal and tainted the evidence seized pursuant to the search warrant. In reviewing a motion to suppress, this Court is bound by the trial court's findings of fact unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). As the trier of fact, the trial court is able to assess the credibility of witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, we review the trial court's conclusions of law de novo. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures. The purpose of these provisions is to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting Camara v. Mun. Court, 387 U.S. 523, 528 (1967)). A bedrock principle of Fourth Amendment law is that warrantless searches and seizures inside a residence are presumed to be unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980). Even though a felony has been committed and officers have probable cause to believe that they will locate incriminating evidence inside a residence, a warrantless entry to search for contraband or weapons is unconstitutional absent exigent circumstances. Id. at 587-88; see State v. Clark, 844 S.W.2d 597, 599 (Tenn. 1992).

The State contends that exigent circumstances existed justifying the warrantless entry when the deputies heard people running inside the defendants' residence. Based upon their observations,

the deputies could have reasonably concluded that the occupants were attempting to destroy evidence. See Jones v. Lewis, 874 F.2d 1125, 1130 (6th Cir. 1989). However, the possibility of the destruction of evidence did not arise until the deputies drove up to the defendants' residence, thereby alerting the occupants to their presence. In State v. Hendrix, this Court recognized the prohibition against police-created exigent circumstances. 782 S.W.2d 833, 835 (Tenn. 1989). However, we declined to determine whether exigent circumstances were created by the police because neither a warrantless entry nor a search occurred. See id. Our conclusion that exigent circumstances justifying a warrantless entry may not be created by the law enforcement officer's actions is consistent with holdings from other jurisdictions. See, e.g., United States v. Munoz-Guerra, 788 F.2d 295, 298 (5th Cir. 1986) (officer created the exigency by knocking on the defendant's door and alerting the defendant to the officer's presence); Hornblower v. State, 351 So. 2d 716, 718 (Fla. 1977) (officer created the exigency by knocking on the defendant's door resulting in "suspicious movement"); Latham v. Sullivan, 295 N.W.2d 472, 478 (Iowa Ct. App. 1980) (officer created the exigency by knocking on the defendant's door and requesting consent to search the residence); State v. Kelgard, 594 P.2d 1271, 1273 (Or. Ct. App. 1979) (officer created the exigency by "a premature confrontation with a potential defendant"). In this case, the deputies created the exigent circumstances by approaching the defendants' residence and alerting the defendants to the presence of the deputies. Therefore, the warrantless entry in this case was not supported by exigent circumstances and violated both the federal and state constitutions.[1]

Having concluded that the warrantless entry was unlawful, we next examine the effect of this illegality on the admissibility of evidence subsequently seized from the defendants' residence. The exclusionary rule may bar the admissibility of evidence either directly or indirectly obtained from an unconstitutional search or seizure. See Wong Sun v. United States, 371 U.S. 471, 485 (1963). However, the exclusionary rule does not apply to evidence obtained by means independent of the constitutional violation. See id. at 487. Pursuant to the independent source doctrine, an unlawful entry does not mandate the suppression of evidence located inside a residence if the evidence is subsequently discovered following the execution of a valid warrant based upon facts independent and separate from information discovered as a result of the unlawful entry. Clark, 844 S.W.2d at 600 (citing Segura v. United States, 468 U.S. 796, 813-14 (1984)). The underlying policy of the independent source doctrine is that "while the government should not profit from its illegal activity, neither should it be placed in a worse position that it would otherwise have occupied." Murray v. United States, 487 U.S. 533, 542 (1988).[2]

Despite the deputies' unlawful entry and regardless of any illegality in the defendants' subsequent detention, the deputies' undisputed testimony establishes that no evidence was identified or seized during the initial entry and detention. Furthermore, the affidavit supporting the warrant

---

[1] Because the subsequent detention was illegal based on the unlawful warrantless entry, we need not reach the issue of whether the length of the detention, approximately two hours, was unreasonable.

[2] The defendants contend the State waived this issue by failing to raise it in the trial court. However, due to the primary purpose of the exclusionary rule and the independent source doctrine and this Court's obligation to review de novo the trial court's application of law at a suppression hearing, we elect to address the issue.

did not refer to the entry or detention. The deputies obtained the information in the affidavit prior to the initial entry. The affidavit contains information relating to the anonymous tip and Deputy Meggs' observations while driving on the roadway and approaching the defendants' front door. A person does not have an expectation of privacy in the area in front of his or her residence leading from the public way to the front door. State v. Cothran, 115 S.W.3d 513, 522 (Tenn. Crim. App. 2003) (citation omitted). Thus, Deputy Meggs' observations as he approached the defendants' residence and stood at the front door were not unlawful and did not result from the warrantless entry.

When Deputy Verner approached the back of the defendants' residence and knocked on the back door, he entered an area where the defendants may have possessed an expectation of privacy. See State v. Harris, 919 S.W.2d 619, 624 (Tenn. Crim. App. 1995). However, the affidavit did not refer to Deputy Verner's observations. Accordingly, we conclude that the unlawful entry and detention did not taint the evidence seized pursuant to the search warrant.

Although we conclude that evidence seized pursuant to the warrant was not tainted by the warrantless entry, our inquiry does not end here. We must also determine whether the affidavit supporting the issuance of the warrant under which the evidence was seized established probable cause to search the defendants' residence. Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution require probable cause for the issuance of a warrant. See Illinois v. Gates, 462 U.S. 213, 229-31 (1983); State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). Probable cause is defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." Henning, 975 S.W.2d at 294 (citation omitted).

The probable cause necessary for issuance of a search warrant must be based upon evidence appearing in a written and sworn affidavit. State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989). The affidavit must present facts upon which "a neutral and detached magistrate, reading the affidavit in a common sense and practical manner," can determine the existence of probable cause for the issuance of a search warrant. Henning, 975 S.W.2d at 294 (citing State v. Bryan, 769 S.W.2d 208, 210 (Tenn. 1989)). Furthermore, the affidavit must provide more information than just the affiant's conclusory allegations to ensure that the magistrate exercises independent judgment. Jacumin, 778 S.W.2d at 432. In reviewing the existence of probable cause for issuance of a warrant, we may consider only the affidavit and may not consider any other evidence known by the affiant or provided to or possessed by the issuing magistrate. Henning, 975 S.W.2d at 295.

The State maintains that Deputy Meggs' detection of anhydrous ammonia and ether coming from the defendants' residence alone established probable cause for the issuance of the search warrant. However, we need not decide whether the smell of these substances, standing alone, established probable cause. Rather, the affidavit in this case contains not only the observations of Deputy Meggs, the affiant, but also information from a confidential informant.

An affidavit may contain hearsay information supplied by a confidential informant to establish probable cause. Henning, 975 S.W.2d at 294-95. In determining the reliability of the

information contained in an affidavit, a distinction exists between a "citizen-informant" or a bystander witness and criminal informants or those from a "criminal milieu." State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982). Information provided by a citizen-informant who is known to the affiant is presumptively reliable. State v. Stevens, 989 S.W.2d 290, 293 (Tenn. 1999). The reliability of the information of a citizen-informant whose identity is not disclosed is to be determined from the circumstances and the affidavit in its entirety. Melson, 638 S.W.2d at 356. The affidavit in the present case does not provide any information as to whether the anonymous caller was a citizen-informant. Therefore, the presumption of reliability does not apply. See Stevens, 989 S.W.2d at 295.

Instead, we must apply the two-prong test for reliability for information supplied by criminal informants. See Spinelli v. United States, 393 U.S. 410, 412-13 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964); Jacumin, 778 S.W.2d at 436. The magistrate who is issuing the search warrant must be informed of the basis of the informant's knowledge and either the basis of the informant's credibility or the reliability of the informant's information. State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993). Independent police corroboration may compensate for deficiencies in either prong. Jacumin, 778 S.W.2d at 436. However, each prong must be separately considered and satisfied to establish probable cause. Id.

With regard to the confidential informant's tip, the affidavit states that "[o]n 9/15/01 the Carroll County Sheriffs Department received an anonymous call that someone was cooking me[th]amphetamine at 7200 Hwy 190 in Carroll County." The affidavit contains no information regarding the basis of the informant's knowledge or credibility or the reliability of the informant's information.

However, the affidavit includes independent police corroboration consisting of Deputy Meggs' personal observations. The affidavit provides the following facts: Upon receiving an anonymous tip that someone was manufacturing methamphetamine at the defendants' residence, Deputy Meggs smelled ether coming from the area of the defendants' residence. As the deputy approached the defendants' residence, he smelled both ether and anhydrous ammonia coming from inside of the residence. Deputy Meggs also heard people running inside of the residence. Finally, based upon his prior experience, Deputy Meggs associated his observations with the operation of a methamphetamine laboratory. These facts in combination provide more than sufficient independent police corroboration to compensate for deficiencies in meeting the two-prong test under Jacumin. Therefore, we conclude the information provided in the affidavit is sufficient to establish probable cause for the issuance of a search warrant.

## CONCLUSION

We conclude that although the deputies' warrantless entry into the defendants' residence was unconstitutional, the unlawful entry and any illegality in the subsequent detention did not taint the evidence seized pursuant to the search warrant. Furthermore, the affidavit supporting the issuance of the search warrant is sufficient to establish probable cause. Accordingly, we affirm the judgment

of the Court of Criminal Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

The costs of appeal are taxed to the defendants, William Timothy Carter and Virginia Darlean Carter, or their sureties for which execution may issue if necessary.

_____

JANICE M. HOLDER, JUSTICE