IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2019 Session

## STATE OF TENNESSEE v. SAMANTHA GRISSOM SCOTT

**Appeal from the Circuit Court for Warren County**
**No. 18-CR-1805      Larry B. Stanley, Jr., Judge**

_____

### No. M2018-01852-CCA-R3-CD
_____

CAMILLE R. MCMULLEN, J., dissenting.

I dissent from the dismissal of this appeal. The majority contends that the certified question is not dispositive of the case because "even if the Defendant's consent to search the home was constitutionally invalid and exigent circumstances did not exist, the evidence would have been inevitably discovered." The majority rests its decision on the theory that the deputies <u>could have</u> obtained and executed a search warrant to search the Defendant's home for the third-party arrestee, Dishman, which would have eventually revealed the drug-related evidence. I believe that the majority misapprehends the inevitable discovery doctrine in rejecting the certified question in this case. <u>See</u> <u>United States v. Quinney</u>, 583 F.3d 891, 894-95 (6th Cir. 2009) (reversing denial of motion to suppress evidence seized from defendant's residence without a warrant based on misapplication of inevitable discovery doctrine after recognizing that finding the evidence admissible simply because the agents <u>could have</u> obtained a warrant would have totally obviated the warrant requirement); <u>State v. Cothran</u>, 115 S.W.3d 513, 525 (Tenn. Crim. App. 2003) ("Proof of inevitable discovery 'involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment.'") (quoting <u>Nix v. Williams</u>, 467 U.S. 421, 444 n.5 (1984)). Applying the inevitable discovery doctrine, as the majority has done here, would render virtually every Fourth Amendment determination certified pursuant to Rule 37 meaningless. Regardless, based on this record, the inevitable discovery doctrine does not defeat the dispositive nature of the certified question in this case.

The inevitable discovery doctrine states that "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by <u>lawful</u> means[,] then the deterrence rationale has so little basis that the evidence should be received." <u>Nix</u>, 467 U.S. at 444 (emphasis added). As explained in <u>Hudson v. Michigan</u>,

"independent" or "inevitable" discovery refers to discovery that did occur or that would have occurred (1) despite (not simply in the absence of) the unlawful behavior and (2) independently of that unlawful behavior. The government cannot, for example, avoid suppression of evidence seized without a warrant (or pursuant to a defective warrant) simply by showing that it could have obtained a valid warrant had it sought one. See, e.g., Coolidge v. New Hampshire, 403 U.S. 443, 450-451, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (emphasis added). Instead, it must show that the same evidence "inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S., at 444, 104 S.Ct. 2501 (emphasis added). "What a man could do is not at all the same as what he would do." Austin, Ifs And Cans, 42 Proceedings of the British Academy 109, 111-112 (1956).

547 U.S. 586, 616 (2006).

The inevitable discovery exception rests upon the principle that the remedial purposes of the exclusionary rule are not served by suppressing evidence discovered through a "later, lawful seizure" that is "genuinely independent of an earlier, tainted one." Murray v. United States, 487 U.S. 533, 542 (1988) (emphasis added); see also id., at 545, (Marshall, J., joined by Stevens and O'Connor, JJ., dissenting) ("When the seizure of the evidence at issue is 'wholly independent of' the constitutional violation, then exclusion arguably will have no effect on a law enforcement officer's incentive to commit an unlawful search." (footnote omitted)).

To begin, the record herein contains no evidence that the deputies had probable cause to believe that the intended arrestee was at the Defendant's house at the time that they arrived there. See Steagald v. United States, 451 U.S. 204, 212 n.6 (1981). In particular, the record is devoid of any evidence indicating why the White County Sheriff's Department believed the intended arrestee would be at the Defendant's home on December 20, 2017, and Deputy Tyler Glenn admitted that he had no independent information concerning the intended arrestee. The record is likewise devoid of any evidence regarding the nature of the outstanding warrants or the dangerousness of the intended arrestee. It shows only that the intended arrestee could be potentially armed, which apparently is not unusual in rural, Warren County. With this limited information, a total of nine deputies surrounded the Defendant's house with guns drawn and ordered her out of her home repeatedly with loudspeakers until the Defendant relented and exited her house twenty to thirty minutes later. The Defendant testified that she felt threatened and frightened and that she had no choice but to come out of the house. She also said that she panicked after seeing all the officers with guns pointed at her home. Although Deputy Derek Bowles apparently believed that co-defendant Bell was the intended

arrestee, Deputy Bowles did not testify at the suppression hearing, and there was no testimony providing the description of the intended arrestee or Bell.

Based on the above facts, the drug-related evidence would not have been inevitably discovered in the Defendant's house pursuant to a search warrant because: (1) the Defendant's initial seizure was illegal, see United States v. Thomas, 430 F.3d 274, 277 (6th Cir. 2005)[1]; State v. Holly N. Hilliard, No. E2015-00967-CCA-R3-CD, 2017 WL 3738470, at *8 (Tenn. Crim. App. Aug. 29, 2017); (2) all evidence obtained pursuant to this illegal seizure is tainted and cannot be used in an affidavit for a search warrant, see Florida v. Royer, 460 U.S. 491, 507-08 (1983); Holly N. Hilliard, 2017 WL 3738470, at *10; State v. Linda Greene, 2009 WL 3011108, at *9 (Tenn. Crim. App. Sept. 22, 2009); and (3) any affidavit for a search warrant that did not include the evidence obtained pursuant to the illegal seizure would have failed to set forth facts from which a reasonable conclusion might be drawn that the intended arrestee was in the place to be searched. Steagald, 451 U.S. at 214 n.7 ("Specifically, absent exigent circumstances[,] the magistrate, rather than the police officer, must make the decision that probable cause exists to believe that the person or object to be seized is within a particular place" and any deprivation of a third party's interest in the privacy of his home must be based on "an independent showing that a legitimate object of a search is located in the third party's home."); State v. Tuttle, 515 S.W.3d 282, 300 (Tenn. 2017); State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993).

Given that the Defendant's consent was not voluntary and that the exigent circumstances rule and the inevitable discovery doctrine do not apply, the Defendant's certified question is, in fact, dispositive. Moreover, in addressing the merits of the certified question, I would have expressly concluded that the Defendant's consent was constitutionally invalid and that exigent circumstances did not exist. Kentucky v. King, 563 U.S. 452, 469 (2011) (when officers gain entry to premises by means of an actual or threatened violation of the Fourth Amendment, the exigent circumstances rule does not apply); State v. Carter, 160 S.W.3d 526, 532 (Tenn. 2005) (concluding that because "the deputies created the exigent circumstances by approaching the defendants' residence and

---

[1] In Thomas, the Sixth Circuit recognized that "a consensual encounter at the doorstep may evolve into a 'constructive entry' when the police, while not entering the house, deploy overbearing tactics that essentially force the individual out of the home." 430 F.3d at 277; see United States v. Morgan, 743 F.2d 1158, 1166 (6th Cir. 1984) (holding that a "constructive entry" occurred when a suspect emerged from a house "in response to coercive police conduct"); United States v. Saari, 272 F.3d 804, 809 (6th Cir. 2001) (concluding that the Fourth Amendment was violated when officers "summoned Defendant to exit his home and acted with such a show of authority that Defendant reasonably believed he had no choice but to comply").

alerting the defendants" as to their presence, "the warrantless entry in this case was not supported by exigent circumstances and violated both the federal and state constitutions"); State v. Rodney Ford, No. 01C01-9708-CR-00365, 1999 WL 5437, at *4 (Tenn. Crim. App. Jan. 7, 1999) (holding that State failed to carry its burden of demonstrating why the officers did not obtain a search warrant prior to entering third-party defendant's home and noting that there was no evidence in the record to justify the officers' decision to ignore this constitutional requirement). Because I would have reversed the decision of the trial court and dismissed the Defendant's convictions, I respectfully dissent.

_____
CAMILLE R. MCMULLEN, JUDGE