IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 1, 2024 Session

## JASON COLLINS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Henderson County**
**No. 18-117-2C        Donald H. Allen, Judge**

———————————————————————

## No. W2023-01580-CCA-R3-PC

———————————————————————

Petitioner, Jason Collins, was convicted of one count of possession of .5 grams or more of methamphetamine with the intent to sell, one count of possession of .5 grams or more of methamphetamine with the intent to deliver, and one count of possession of drug paraphernalia.  The trial court merged the two methamphetamine convictions and sentenced Petitioner to serve a total effective sentence of twenty years, eleven months, and twenty-nine days in confinement.  This court affirmed Petitioner's convictions and sentences on direct appeal.  Petitioner then filed a petition for post-conviction relief in which he claimed ineffective assistance of counsel, and the post-conviction court denied the petition after a hearing.  On appeal, Petitioner asserts that trial counsel was ineffective in failing to file a motion for new trial, in failing to seek suppression of drugs and other evidence seized from his home, and in failing to conduct a "complete and accurate" investigation of a defense witness.  After review, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Mitchell A. Raines, Assistant Public Defender—Appellate Division (on appeal); Jeremy Epperson, District Public Defender (at hearing), for the appellant, Jason Collins.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Matt Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. FACTS AND PROCEDURAL HISTORY

### A. Trial

On October 9, 2017, officers knocked on Petitioner's door to execute an arrest warrant charging Petitioner with the sale of drugs in an unrelated case. When Petitioner shouted a warning to the home's other occupants about the officers' presence, officers entered the home to prevent the destruction of evidence and subsequently discovered the drugs and paraphernalia underlying the charges of the present case. On direct appeal, this court summarized the facts presented at Petitioner's June 2019 trial:

> [On October 9, 2017] . . . former City of Lexington Police Department ("LPD") Officer James Robert McCready . . . knocked on the door of 480 Franklin Avenue, a home that he knew to be [Petitioner's] residence, and [Petitioner] answered. Upon seeing Officer McCready, the [Petitioner] "yelled, 'Police,' and turned back towards the residence." At that point, Officer McCready "ran past him, and . . . went into the house." Officer McCready encountered a man and a woman, later identified as Dawn Michlitsch and Chad Scott, in a back bedroom of the residence; the woman "was half-way in between the bed and like a dresser-type area reaching for . . . the illegal narcotics and the bags and scales and . . . other paraphernalia." Officer McCready collected a bag containing what appeared to be methamphetamine along with "[t]wo sets of digital scales, a couple of spoons, some batteries," and some "small cotton balls." Forensic testing established that the substance collected by Officer McCready was 8.35 grams of methamphetamine.

> During cross-examination, Officer McCready acknowledged that [Petitioner] shouted "Police" after Officer McCready had asked if anyone else was inside the residence. He believed [Petitioner] to be warning the other occupants. Officer McCready conceded that the drugs and drug paraphernalia were all found in the back bedroom the man and the woman occupied when the police arrived. Officers searched the house and the [Petitioner's] person but found no other contraband.

> LPD Narcotics Investigator Ricky Montgomery testified that over the course of his career, the source of methamphetamine in the community had switched from local manufacture in clandestine labs to methamphetamine "shipped in over the border and just coming in from Mexico." He said, "It's

been quite some time since we received an actual meth lab here in Lexington." Investigator Montgomery testified that "homemade dope is not very pure" and "more of a powdery form" while the methamphetamine obtained from Mexico was "a higher quality" and "a crystal-like substance."

Investigator Montgomery testified that, as part of his duties, he often employed the services of confidential informants to participate in controlled buys of methamphetamine. He said that "[g]enerally, we purchase grams at a time" because that was the amount typically purchased by drug users for personal use and that the price of a gram of methamphetamine was $80 to $100 at the time of trial. He said that the scales and spoons collected by Officer McCready as well as the baggies located on the dresser were items used by drug dealers to package drugs for resale. Investigator Montgomery said that he prepared arrest warrants for [Petitioner], Ms. Michlitsch, and Mr. Scott. Mr. Scott absconded from the jurisdiction, and Ms. Michlitsch pleaded guilty.

During cross-examination, Investigator Montgomery agreed that [Petitioner] did not have actual possession of either the drugs or drug paraphernalia in this case. He said that he had elected to charge [Petitioner] because those items were located inside [Petitioner's] residence.

The State rested, and Dawn Michlitsch testified on behalf of [Petitioner].

Ms. Michlitsch testified that she and [Petitioner] were friends and that he had been her roommate when they lived in Oregon. On October 9, 2017, she and her boyfriend, Chad Scott, spent the night at [Petitioner's] house in the guest bedroom. She said that she "had been there for a little bit" and that she "had stayed in my own room, my own area." She recalled that on October 9, she and Mr. Scott were in the guest bedroom "with the door closed" when she heard [Petitioner] say, "'Police are here.'" At that point, Ms. Michlitsch "stood up, and someone answered the door." She added, "I thought it was a joke, you know, because it was a guy in normal clothes, you know, and so, I relaxed and then they said, 'Step out,' you know, and I realized people were serious." She said that the officer found methamphetamine, "some scales and some paraphernalia" inside the bedroom she and Mr. Scott occupied.

Ms. Michlitsch testified that she had pleaded guilty to possession with intent to sell methamphetamine. She said that she had purchased the

methamphetamine that officers recovered from the bedroom "that very same morning" from another woman inside [Petitioner's] living room while [Petitioner] slept in his own bedroom. Ms. Michlitsch said that she pleaded guilty to possessing the methamphetamine because it belonged to her . . . .

Ms. Michlitsch acknowledged having told Investigator Montgomery that she had also purchased "a little amount" of methamphetamine from a person named Tasha Wheeler. She said that she used money she took from Mr. Scott's wallet, some of which was her "birthday money" and some of which was the proceeds from Mr. Scott's disability check, to purchase the drugs. She said that she used [Petitioner's] cellular telephone to make the arrangement to purchase drugs from Ms. Wheeler. She denied that Ms. Wheeler was actually arranging to purchase drugs from her on the day of the offenses.

Ms. Michlitsch acknowledged that she had used methamphetamine with [Petitioner] and Mr. Scott on the day of the offenses but insisted that, although [Petitioner] knew there were drugs in the house, he did not know the amount. She said that the scales, spoons, and baggies had been in the guest bedroom when she began staying at [Petitioner's] house. She denied that she was getting up to get rid of the drugs when Officer McCready entered the room, saying, "I just came up to see what was going on." Ms. Michlitsch conceded that plea documents in her case indicated that she had entered a best interests plea but said that she had assumed that her plea of guilty meant that she was admitting that the drugs belonged to her.

Following Ms. Michlitsch's testimony, [Petitioner] elected not to testify and chose to present no further proof.

*State v. Collins*, No. W2019-01415-CCA-R3-CD, 2020 WL 1972612, at *1-3 (Tenn. Crim. App. Apr. 24, 2020), *perm. app. denied* (Tenn. Sep. 21, 2020).

In rebuttal, the State called Ms. Wheeler—who Ms. Michlitsch said gave her drugs on the day of her arrest—to testify. *Id.* at *3.[1] Petitioner objected to Ms. Wheeler's testimony on the basis that the State had not disclosed Ms. Wheeler as a potential witness.

---

[1] According to this court in Petitioner's direct appeal, Investigator Montgomery spoke with Ms. Michlitsch two days before trial. *Collins*, 2020 WL 1972612, at *3. During this conversation, Ms. Michlitsch stated that she purchased drugs from Ms. Wheeler on the day of the incident. *Id.* Hence, "[b]ecause the State 'suspected that' Ms. Michlitsch would implicate Ms. Wheeler based upon Ms. Michlitsch's conversation with Investigator Montgomery . . . they made 'arrangements to have her [at trial]" for the purpose of rebuttal. *Id.*

- 4 -

*Id.* In response, the State argued that it was not required to disclose Ms. Wheeler as a potential rebuttal witness because it did not decide to call Ms. Wheeler until Ms. Michlitsch testified that she bought the drugs from Ms. Wheeler. *Id.* The trial court ruled that Ms. Wheeler could testify to "rebut or contradict any testimony that" Ms. Michlitsch had offered, "but that she could not offer any testimony that the State could or should have offered in its case-in-chief." *Id.* Ms. Wheeler testified that she had "met [Ms. Michlitsch] like probably two or three times," but she denied selling drugs to Ms. Michlitsch on the day in question. *Id.*

Based upon this proof, the jury convicted Petitioner of one count of possession of .5 grams or more of methamphetamine with the intent to sell, one count of possession of .5 grams or more of methamphetamine with the intent to deliver, and one count of possession of drug paraphernalia. *Id.* The trial court merged the two methamphetamine convictions and sentenced Petitioner to a term of twenty years confinement at 35 percent service as a Range II, multiple offender. *Id.* at *6. For the paraphernalia conviction, the trial court sentenced Petitioner to a term of eleven months and twenty-nine days confinement to be served consecutively to his sentence of twenty years. *Id.*

Petitioner did not file a motion for new trial but did file a timely notice of appeal. On direct appeal, Petitioner argued that the evidence was insufficient to support his convictions, that the trial erred by permitting Ms. Wheeler to testify as a rebuttal witness, and that the court erred by ordering consecutive sentencing. Concluding that no error existed, this court affirmed Petitioner's convictions. *Id.* at *1. Petitioner filed an application for permission to appeal to our supreme court, which was denied on September 21, 2020.

Thereafter, Petitioner filed a timely pro se petition for post-conviction relief and an amended petition, alleging several instances of ineffective assistance of counsel. The post-conviction court subsequently appointed post-conviction counsel to represent Petitioner. Post-conviction counsel filed a notice that no further amendment to Petitioner's petition for post-conviction relief would be filed. On May 2, 2023, the post-conviction court conducted a hearing on Petitioner's claims.

## B. Post-Conviction Hearing

At the post-conviction hearing, Petitioner called his trial counsel ("Counsel") as his first witness. Counsel testified that he had been a licensed attorney in Tennessee for almost nine years at the time of the hearing and that he primarily practiced criminal law. Counsel was appointed to represent Petitioner shortly after Petitioner was indicted in May 2018 and represented him through his trial and direct appeal. Counsel met with Petitioner "several" times in jail and reviewed discovery with him "definitely more than one time." Given the

time that had passed, Counsel did not remember specific details of the representation. However, Counsel did recall discussing the possibility of filing pre-trial motions and developing a trial strategy with Petitioner.

One pre-trial motion that Counsel discussed with Petitioner was a motion to suppress the drugs and drug paraphernalia seized by officers during the warrantless entry and search of Petitioner's house. However, Counsel ultimately did not file this motion to suppress. According to Counsel's testimony, he felt that "this was clearly an exigent circumstances case," and a co-defendant had filed a similar motion that was denied on those grounds. Moreover, Counsel "felt that it would have impacted our argument at trial . . . because the argument at trial was, hey, none of this stuff was mine to begin with."

Counsel additionally developed a trial strategy with Petitioner. Counsel testified that the trial strategy was "wrong place/wrong time type of argument . . . and that [Petitioner] had nothing to do with" the drugs in his house. Counsel said he and Petitioner agreed to advance this argument by calling Ms. Michlitsch to testify on Petitioner's behalf because prior to trial, Ms. Michlitsch had pleaded guilty to possessing the drugs and drug paraphernalia found in Petitioner's house. Counsel testified that he interviewed Ms. Michlitsch prior to trial but could not recall the details of their conversation.

Counsel testified that, after the defense presented its proof at trial, the State called a rebuttal witness, Ms. Wheeler, who was not previously disclosed as a witness and was a "total surprise" to Counsel. Counsel testified that he objected to Ms. Wheeler's "surprise" testimony; however, the trial court permitted her testimony to the extent that she rebutted Ms. Michlitsch's testimony.

Following the guilty verdict and sentencing, Counsel chose not to file a motion for new trial. Counsel testified that he thought the "sufficiency of the evidence was . . . the better argument to go with" so that is what he "focused most of [his] attention on" in Petitioner's appeal. However, Counsel acknowledged that he raised Ms. Wheeler's testimony as an issue on appeal. Counsel also acknowledged that because he did not file a motion for new trial, the issue relative to Ms. Wheeler's testimony was only subject to plain error review.

Petitioner testified on his own behalf at the post-conviction hearing. Petitioner testified that Counsel received discovery from the State, reviewed the case with him, explained plea offers, and discussed potential pre-trial motions. Petitioner stated that he wanted Counsel to file a motion to suppress based on the warrantless search of his house, but that Counsel told him that the motion would not succeed and "would be a big waste of time[.]" Petitioner acknowledged that a co-defendant filed a similar motion to suppress, which the trial court denied.

Prior to trial, Petitioner and Counsel discussed having Ms. Michlitsch testify on Petitioner's behalf. Petitioner agreed to this strategy. Petitioner testified that Counsel told him that Ms. Michlitsch was willing to testify that "she already took a[n] open plea of guilty and that she was willing to state that the drugs belonged to her, that she possessed them, [and] that she paid for them[.]" Petitioner contended, however, that he did not anticipate Ms. Michlitsch's making "reference that I had knowledge of these drugs," or that they had used drugs together. Petitioner testified that Ms. Michlitsch's testimony ultimately hurt his defense strategy, and he was unsure if Counsel "tried to even find out" that Ms. Michlitsch would testify to Petitioner's prior drug use or his knowledge of the drugs and drug paraphernalia in his house. Petitioner alleged that "had I been made aware of" Ms. Michlitsch's pre-trial statements to Investigator Montgomery, "maybe my decision would have been different."

The post-conviction court addressed Petitioner's claims in its written order denying post-conviction relief. The post-conviction court rejected Petitioner's claims of ineffective assistance of counsel, finding that Petitioner failed to establish deficient performance and prejudice. In its written order, the post-conviction court credited the testimony of Counsel who "testified that he had fully discovered the State's file, had filed motions on behalf of [Petitioner], and that he and Mr. Collins together discussed fully the State's evidence against him and that they developed a trial strategy." The court additionally cited Counsel's testimony that Petitioner could be impeached due to his prior felony convictions. Finally, the court agreed with counsel that there was no legal basis to support a motion to suppress the warrantless search of Petitioner's home.

Petitioner's timely appeal follows.

## II. ANALYSIS

### A. Post-Conviction Standard of Review

To obtain post-conviction relief, a petitioner must establish his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A petitioner bears the burden of proving the factual allegations contained in the petition by clear and convincing evidence. *Id.* § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 296 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Appellate courts do not reassess the post-conviction court's determination of the credibility of witnesses. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the post-conviction judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). On appeal, a post-conviction court's factual findings will not be disturbed unless the evidence contained in the record preponderates against the findings. *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988); *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). On the other hand, conclusions of law are given no presumption of correctness on appeal. *Dellinger*, 279 S.W.3d at 293; *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). We review "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (first citing *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011); and then citing *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)).

## B.  Ineffective Assistance of Counsel

Petitioner asserts that Counsel was ineffective in (1) failing to file a motion for new trial premised upon the State's introduction of a surprise rebuttal witness at trial; (2) failing to file a pre-trial motion to suppress the drugs and paraphernalia obtained by officers during their warrantless entry and search of his home; and (3) failing to adequately interview Petitioner's only witness. We will address each of Petitioner's contentions in turn.

Both the United States Constitution and the Constitution of the State of Tennessee guarantee criminal defendants the right to effective assistance of counsel. U.S. Const. amend VI; Tenn. Const. art. I, § 9. Under the Sixth Amendment to the United States Constitution, when a petitioner raises an ineffective assistance of counsel claim, the burden is on the petitioner to show both (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). To prevail on such a claim, a petitioner must prove both prongs of the *Strickland* test, and failure to prove either is "a sufficient basis to deny relief on the claim." *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "[A] court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

To prove that counsel's performance was deficient, a petitioner must establish that his attorney's conduct fell below an objective standard of reasonableness or "outside the

wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As our supreme court has held:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Finch v. State*, 226 S.W.3d 307, 315-16 (Tenn. 2007) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 934-35 (Tenn. 1975)). A reviewing "court may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation." *Alley v. State*, 958 S.W.2d 138, 149 (Tenn. Crim. App. 1997) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). A reviewing court also cannot criticize a sound, but unsuccessful, tactical decision made during the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

To prove prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* As such, a petitioner must establish that his or her attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *Burns*, 6 S.W.3d at 463).

### 1. Failure to File Motion for New Trial

Petitioner argues that Counsel was ineffective because Counsel "failed to make a motion for new trial after the State introduced a surprise rebuttal witness." In support of this argument, Petitioner asserts that there was no legitimate tactical reason to forgo filing a motion for new trial to preserve the issue for plenary appellate review and that Petitioner suffered prejudice in his appeal as a result. The State contends that the post-conviction court correctly determined that Counsel was not deficient in his strategic choice of post-trial issues and that Petitioner failed to prove prejudice. Because we conclude that the record supports the court's denial of relief, Petitioner is not entitled to relief.

On direct appeal, Petitioner unsuccessfully argued that the trial court erred by permitting the State to present Ms. Wheeler as a rebuttal witness without having provided

notice that she may testify at trial. *Collins*, 2020 WL 1972612, at *3. Concluding that the issue was waived, this court reviewed the issue under plain error, reasoning as follows:

> The "State's duty to disclose the names of its witnesses is merely directory, not mandatory," and "a defendant will be entitled to relief for nondisclosure only if he or she can demonstrate prejudice, bad faith, or undue advantage." *State v. Dellinger*, 79 S.W.3d 458, 489 (Tenn. 2002) (citing *State v. Harris*, 839 S.W.2d 54, 69 (Tenn. 1992)). That being said, "[t]he [S]tate has an obligation to proceed within the context of the applicable norms of a level-handed prosecution." *State v. West*, 825 S.W.2d 695, 698 (Tenn. Crim. App. 1992). Pursuant to this obligation, the State should not call a witness as a rebuttal witness when "[t]he evidence given by the witness [is] proof-in-chief." *Id.* In this case, the trial court strictly limited Ms. Wheeler's testimony to only that which directly contradicted the testimony offered by Ms. Michlitsch. Accordingly, no clear and unequivocal rule of law was breached, and, thus, this claim does not satisfy the criteria for plain error review.

*Id.* at *3-4.

As previously noted, to prevail on a claim of ineffective assistance of counsel, a petitioner must prove both prongs of the *Strickland* test, and failure to prove either is "a sufficient basis to deny relief on the claim." *See Henley*, 960 S.W.2d at 580. "[A] court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad*, 938 S.W.2d at 370. Under the second *Strickland* prong, Petitioner has the burden of showing that Counsel's alleged deficiency caused prejudice, or in the context of a waived issue on direct appeal, that "there is a reasonable probability that full consideration of the waived [issue] . . . would have changed the outcome." *Potter v. State*, No. E2021-01063-CCA-R3-PC, 2022 WL 4243967, at *4 (Tenn. Crim. App. Sept. 15, 2022). Petitioner claims that under plenary review, "this court would have taken a deeper look into this court's holding in [*State v. West*, 825 S.W.2d 695, 698 (Tenn. Crim. App. 1992),] and determined that failing to disclose a rebuttal witness to [Petitioner] before trial was prejudicial error." We disagree.

In *West*, the defendant challenged his second degree murder conviction, arguing that the trial court erred in allowing the testimony of a rebuttal witness who was not disclosed to the defendant. *Id.* at 696-97. At trial, the defendant testified that he shot the victim twice when he thought the victim was going to kill him during a disagreement about a coerced drug deal. *Id.* at 697. In rebuttal, the State was permitted to offer testimony from a previously undisclosed eyewitness, who directly contradicted the defendant's argument of self-defense. *Id.* at 698. On review, this court concluded the trial court committed

reversible error because the State did not "proceed within the context of the applicable norms of a level-handed prosecution," by their introduction of a surprise rebuttal witness whose evidence was not "rebuttal," but "proof-in-chief". *Id.* According to this court, the rebuttal witness in *West* "was an eyewitness with a story to tell," whose testimony, "made a stronger case for the [State] than any other witness presented." *Id.*

However, as this court stated in *West*, issues concerning undisclosed rebuttal witnesses "must be viewed with the facts in the case at hand and the circumstances surrounding the calling of the witness." *Id.* at 698. Unlike *West*, the trial court in the instant case strictly limited Ms. Wheeler's testimony to rebuttal evidence and prohibited "any testimony that the State could or should have offered in its case-in-chief." *Collins*, 2020 WL 1972612, *3. Hence, the trial court's limited admission of Ms. Wheeler's testimony prevented the chief prejudice perpetuated by the State in *West*.

The post-conviction court found that if a motion for a new trial had been filed, it would not have been successful. Petitioner was required to show a "reasonable probability that full consideration" of the trial court's admission of Ms. Wheeler's testimony "would have changed the outcome." *Potter*, 2022 WL 4243967, at *4; *Wells v. State*, No. E2020-01278-CCA-R3-PC, 2021 WL 5811248, at *15 (Tenn. Crim. App. Dec. 7, 2021), *perm. app. denied* (Tenn. Mar. 23, 2022). We conclude that nothing in the record preponderates against the court's findings on this issue, and Petitioner is not entitled to relief.

## 2. Failure to File a Motion to Suppress

Petitioner also claims that Counsel was ineffective by failing to file a pre-trial motion to suppress evidence obtained when the officers conducted a warrantless entry and search of Petitioner's home after Petitioner shouted a warning to the home's other occupants about the officers' presence. Petitioner argues the motion to suppress would have been granted because the police created the exigency, so the subsequent entry of police into the residence was unlawful. The State contends the warrantless search was justified pursuant to the exigent circumstances created by Petitioner's shouting a warning.

The United States Supreme Court has held that when a petitioner's "principal allegation of ineffectiveness" is based on "counsel's failure to litigate a Fourth Amendment claim competently," the petitioner must establish "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Stated another way, our supreme court has explained,

[T]o establish a successful claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the Petitioner must prove: (1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence.

*Phillips v. State*, 647 S.W.3d 389, 404 (Tenn. 2022) (internal quotations omitted).

Both the United States and Tennessee Constitutions protect individuals against unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. The purpose of these provisions is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002). "[T]he ultimate touchstone of the Fourth Amendment is reasonableness," and "searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, (2006) (internal citations omitted). "[E]vidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

One commonly recognized exception to the warrant requirement is the existence of exigent circumstances, which "arise where the needs of law enforcement [are] so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008) (internal citation omitted). A "frequently-arising [situation] that [has] been found to be sufficiently exigent to render a warrantless search of a domicile reasonable" is "prevent[ing] the imminent destruction of evidence[.]" *Meeks*, 262 S.W.3d at 723; *see Kentucky v. King*, 563 U.S. 452, 460 (2011). Courts evaluate the exigency of circumstances "based upon the totality of the circumstances" and require the State to show "specific and articulable facts and the reasonable inferences drawn from them," which justify the warrantless search. *Meeks*, 262 S.W.3d at 723-24.

Petitioner relies on *State v. Carter* to argue that exigent circumstances did not exist because any exigency was manufactured by the police themselves. 160 S.W.3d 526, 532-33 (Tenn. 2005). In *Carter*, the Sheriff's Office received an anonymous tip that methamphetamine was being manufactured at the defendant's home. *Id.* at 529. When the deputies arrived at the home, they saw an individual peering out of a window. *Id.* at 530. As the deputies exited their vehicles, they then heard people running inside the house. *Id.* The deputies approached the home from the front and rear and "entered the defendants'

- 12 -

residence without a warrant based upon [the] informant's tip and the deputies' recognition of the smell of anhydrous ammonia and ether." *Id.* at 529-30. The deputies proceeded to detain the occupants while obtaining a search warrant. *Id.* at 530. On review, our supreme court held that the entry was unlawful because exigent circumstances "may not be created by the law enforcement officer's actions." *Id.* at 532. The court concluded that the deputies created the exigency "by approaching the defendants' residence and alerting the defendants to the presence of the deputies." *Id.*

While *Carter* acknowledges and applies "the police-created exigency doctrine, its specific holding on this issue, at least for the purposes of interpreting the Fourth Amendment, is abrogated by [*King*, 563 U.S. at 471]." *State v. Anderson*, No. M2011-01766-CCA-R3CD, 2012 WL 2125992, at \*6 n.3 (Tenn. Crim. App. June 12, 2012) (*comparing King*, 563 U.S. at 471 (holding that police did not create exigent circumstances by knocking on a front door and announcing their presence), *with Carter*, 160 S.W.3d at 532 (holding that police "created the exigent circumstances by approaching the defendants' residence and alerting the defendants to the[ir] presence")). Under *King*, "[p]olice conduct leading up to a warrantless search, even if based on exigent circumstances, must be reasonable." *Id*. at \*6. Thus, "when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment," the police-created exigency doctrine does not apply. *King*, 563 U.S. at 469.

Here, based upon the totality of the circumstances, the record shows that the officer had a reasonable basis from specific and articulable facts to believe that the immediate entry into Petitioner's home was necessary to prevent the imminent destruction of evidence. *See id.* at 460; *Meeks*, 262 S.W.3d at 723-24. While serving an arrest warrant on Petitioner from unrelated drug charges,[2] police knocked on Petitioner's door. Then, "[u]pon seeing Officer McCready, [Petitioner] yelled, 'Police,' and turned back towards the residence." *Collins*, 2020 WL 1972612, at \*1. Believing that "[Petitioner was] warning the other occupants," the officer entered the home to prevent the destruction of evidence. *Id.* at \*1. Unlike the deputies in *Carter*, the police presence at Petitioner's house was justified and reasonable. *See Payton v. New York*, 445 U.S. 573, 602-03 (1980) (stating that the subject of an arrest warrant must "open his doors to the officers of the law" and that officers serving an arrest warrant have the implicit "limited authority" to enter a suspect's dwelling if there's reason to believe he is within). The service of an arrest warrant for Petitioner on unrelated drug charges was not "an actual or threatened violation of the Fourth Amendment." *King*, 563 U.S. at 469; *Payton*, 445 U.S. at 602-03. Rather, the exigency was created when Petitioner turned back into his home and warned the other

---

[2] We note that the arrest warrant on the unrelated drug charges does not appear in the record of the current appeal or the appellate record on direct appeal, and Petitioner does not challenge the validity of the arrest warrant.

occupants of the police presence, thus prompting the need to quickly enter the home to prevent the destruction of evidence. Thus, Petitioner failed to establish that a suppression motion would have been meritorious because the officers' actions fell within the exigent circumstances exception to the warrant requirement. *Phillips*, 647 S.W.3d at 404.

Petitioner additionally failed to establish that Counsel's failure to file a suppression motion was objectively unreasonable. *Id.* Counsel testified that in his analysis, "this was clearly an exigent circumstances case" in that Petitioner's actions at the door justified the warrantless search. Counsel additionally testified that he was aware that a co-defendant had litigated a "similar motion that was denied based on exigent circumstances." We agree with the post-conviction court that Counsel made a strategic and reasonable decision "within the range of competence demanded of attorneys" based on adequate preparation when he elected to not file a suppression motion. *See Phillips*, 647 S.W.3d at 408 ("Counsel's performance is not deficient if the issue they failed to raise has no merit or is weak.") (citation omitted); *Moore v. State*, 485 S.W.3d 411, 419 (Tenn. 2016).

The post-conviction court found that Petitioner failed to establish that a suppression motion would have been meritorious or that Counsel's failure to file such motion was objectively unreasonable. As such, the court found that Petitioner necessarily failed to satisfy the final *Phillips* prong. 647 S.W.3d at 405, n.15. From our review of the record, we conclude that nothing in the record preponderates against the court's finding, and Petitioner is not entitled to relief as to this issue.

### 3. Failure to Investigate a Defense Witness

Petitioner argues that Counsel was ineffective for failing to "conduct a complete and accurate investigation" of Petitioner's only witness, Ms. Michlitsch, thus "inviting testimony that was unfavorable to the Defense." Petitioner principally supports this claim by arguing that because Ms. Michlitsch's testimony tended to not support Petitioner's defense theory, Counsel either completely failed to interview Ms. Michlitsch or did so insufficiently. As Petitioner has not met his burden to present evidence in support of this claim, the post-conviction court did not err in denying relief.

It is Petitioner's burden to present evidence to support the issues raised in his post-conviction petition. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "When a petitioner contends that trial counsel failed to . . . interview . . . [a witness] in support of his defense, [this witness] should be presented by the petitioner at the evidentiary hearing." *Id.* "As a general rule, this is the only way the petitioner can establish" that failing to interview the witness caused prejudice. *Id.*

Counsel testified that he interviewed Ms. Michlitsch, though he could not remember the specific details. Petitioner presented no evidence to the contrary. Because of Petitioner's credibility issues, given his prior drug convictions, Ms. Michlitsch was the only trial witness who could support Petitioner's defense strategy that the drugs were not his. To this end, Counsel called Ms. Michlitsch, who testified that the drugs belonged exclusively to her. Given that Counsel interviewed her, this was a reasonable strategic decision to present her as a witness. *See Alley*, 958 S.W.2d at 149.

Moreover, Ms. Michlitsch was not called as a witness by Petitioner at the post-conviction hearing to testify regarding her interview with Counsel. Without her testimony at the evidentiary hearing about this matter, Petitioner failed to establish that he suffered prejudice. *See id.* (stating that it is "elementary" that an appellate court cannot speculate as to what "further investigation" of a witness could have revealed); *Lewis v. State*, No. M2023-01659-CCA-R3-PC, 2024 WL 3738646, at *11 (Tenn. Crim. App. Aug. 9, 2024) (concluding that the petitioner failed to establish prejudice because none of the witnesses counsel allegedly failed to interview testified at the post-conviction hearing). Absent Ms. Michlitsch's testimony to contradict Counsel's, Petitioner's claims are supported by nothing more than conjecture and the benefit of hindsight. *See Adkins*, 911 S.W.2d at 347 (stating that a petitioner is not entitled to the benefit of hindsight); *Brooks*, 756 S.W.2d at 289 (stating that a petitioner bears the burden of presenting evidence preponderating against the post-conviction court's factual findings).

Petitioner has failed to establish that the post-conviction court erred in finding Counsel's investigation was not deficient and that Petitioner suffered no prejudice as a result. Accordingly, the post-conviction court did not err in concluding that Petitioner was not entitled to relief on this issue.

### III. CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

- 15 -